**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-1745-WJM-KMT

ALAN THOMPSON, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

v.

QWEST CORPORATION d/b/a CENTURYLINK QC, and
CENTURYTEL SERVICE GROUP, LLC

        Defendants.

---

**UNOPPOSED MOTION FOR FLSA SETTLEMENT APPROVAL**

---

Plaintiff Alan Thompson ("Plaintiff"), on behalf of himself and all others similarly situated, submits this Unopposed Motion for FLSA Settlement Approval ("Motion") as follows:[1]

**CERTIFICATION OF CONFERRAL**

In accordance with D.C.COLO.LCivR 7.1, counsel certifies they have conferred concerning the relief requested in this Motion. Defendants do not oppose this motion.

**I.**    **CASE SUMMARY**

Defendants operate "a global communications, hosting, cloud and IT services company" that "offers network and data systems management, big data analytics, managed security

---

[1] Plaintiff uses initial caps to reflect terms defined in the parties' Settlement Agreement, attached as Exhibit 1 to this Motion.

services, hosting, cloud, and IT consulting services. The company provides broadband, voice, video, advanced data and managed network services over a robust 265,000-route-mile U.S. fiber network and a 360,000-route-mile international transport network." (Company Description, CenturyLink Job Listings, https://job.centurylink.com/job, last visited 12/22/2017).

Defendants employ Engineer IIs, including Plaintiff Alan Thompson, in their Video Operations business unit ("Video Engineer IIs"), and it classifies these employees as FLSA exempt employees and does not pay them overtime premiums for hours worked beyond forty (40) in a workweek. Plaintiff contends these employees are misclassified and are entitled to overtime pay. Defendants contend these employees are appropriately classified as exempt from the FLSA's overtime requirement.

Plaintiff Thompson pursues unpaid overtime claims on behalf of an FLSA collective of "All persons who work or worked for CenturyLink as Engineer II in Video Operations, within the United States at any time within the last three years" (the **"Video Engineer II Collective"**). This putative Video Engineer II Collective consists of 28 current and former employees, including Plaintiff Thompson and the pre-certification opt-in plaintiffs Scott Baldwin, Nickolas Maag, Travis Manntz, and Dana McFarland.

## II.    PROCEDURAL BACKGROUND

1.    Plaintiff filed his Complaint in the United States District Court for the District of Colorado on July 19, 2017, asserting collective action claims for unpaid overtime wages allegedly owed to him and other similarly situated Video Engineer IIs under the Fair Labor Standards Act, 29 U.S.C. 201 et seq. ("FLSA"). (Doc. 1).

2.    Plaintiff filed his Amended Complaint, reasserting substantially the same claims, on September 11, 2017. (Doc. 14)

3.      Defendants filed their Answers to Plaintiff's Amended Complaint denying liability and asserting several affirmative defenses on September 25, 2017. (Docs. 25-26).

4.      The parties submitted a proposed scheduling order (Doc. 20) and subsequently participated in a scheduling conference with the Court on September 27, 2017.  (Doc. 29).

5.      From September 2017 through January 2018, Plaintiff and Defendants discussed this case in depth including Plaintiff's claims and Defendants' defenses.  Defendants produced compensation and employment information for Plaintiff and other employees in the putative Video Engineer II Collective so that the Parties could more fully discuss and evaluate the claims and defenses.

6.      On December 28, 2017, Plaintiff filed his Motion for FLSA Conditional Collective Action Certification and Notice (Doc. 34), and the Parties continued their settlement discussions and further evaluated the data the Parties had exchanged regarding their respective claims and defenses.

7.      On January 18, 2018, Defendants filed their brief in opposition to Plaintiff's conditional certification motion, vigorously arguing against Plaintiff's allegations and collective action treatment. (Doc. 36).

8.      Throughout this litigation, the Parties exchanged substantial information and data necessary to fully and fairly evaluate the FLSA putative Collective Members' claims, including employees' dates of employment, weeks worked during the relevant limitations period, timekeeping, and compensation data.

9.      Plaintiff and his counsel have conducted a comprehensive investigation and evaluation of the facts and law relating to the claims asserted in this case. In light of the costs, risks, and delay of continued litigation balanced against the benefits of settlement to the FLSA

Collective, Plaintiff and his counsel believe that the settlement as provided in the Settlement Agreement is in the best interests of the FLSA Collective and represents a fair, reasonable, and adequate resolution of the claims in the Action.

10. Defendants denied and continue to deny all of Plaintiff's allegations in the Action. Defendants enter into the Settlement Agreement expressly disavowing any fault, liability, and/or wrongdoing. The Settlement Agreement is in compromise of disputed claims between and among the Parties.

11. Nonetheless, without admitting or conceding any liability or responsibility for damages, Defendants have agreed to settle this case on the terms and conditions set forth in the Settlement Agreement to avoid the burden, expense, inconvenience, and uncertainty of continuing litigation.

## III.  SETTLEMENT TERMS

Defendants agree to pay a Gross Settlement Amount of $275,000.00. (Exh. 1, at ¶ 1). This amount will cover the settlement allocations to Plaintiff and FLSA Collective Members, attorneys' fees and costs, a service award to Plaintiff, and the Settlement Administrator's costs, such that Defendants' settlement liability shall not exceed the sum of $275,000, except for Defendants' share of the required payroll taxes. Defendants shall pay their shares of the required payroll taxes in addition to the $275,000 amount.

The Settlement Agreement provides for a $5,000 Service Payment to Plaintiff Alan Thompson, in recognition of his time and effort in pursuing these claims on behalf of putative FLSA Collective Members (Exh. 1, at ¶ 2C), and it provides for attorneys' fees equal to one-third of the Gross Settlement Amount, or $91,666.67, plus case expenses equal to $510.00 (Exh.

1., at ¶ 2D).  Plaintiff requests this Court approve these awards for the reasons set forth *infra*.
Settlement Administration costs are estimated not to exceed $2,500.00.

The Net Settlement Amount equals the Gross Settlement Amount minus the Service
Payment to Plaintiff, minus attorneys' fees and expenses, and minus the Settlement
Administrator's expenses.  This Net Settlement Amount, subject to Court approval, is estimated
to equal no less than $175,323.33.

Each of the 28 FLSA Collective Members is allocated a proportionate share of the Net
Settlement Amount.  (Exh. 1, at ¶ 2A-2B).  Each FLSA Collective Member is allocated the same
minimum dollar amount of $500.00, plus their Individual FLSA Collective Member Share.
(Exh. 1, at ¶ 2B(i)).  This Individual Collective Member Share is determined using an equitable
points system based upon each person's total number of workweeks during the FLSA's three-
year statutory period and each person's average weekly compensation for those workweeks.
(Exh. 1, at ¶ 2B(iii)).  This results in an average Settlement allocation of $6,262.00 to each
Participating FLSA Collective Member who elects to sign and return a Consent Form, opts into
this FLSA case, and agrees to accept their Individual FLSA Collective Member Allocation in
exchange for releasing any overtime claims against Defendants under the FLSA and any other
federal, state, or local law, arising between July 19, 2014 through the date this Court approves
the Settlement.  (Exh. 1, at ¶ 5).

Only FLSA Collective Members who choose to participate will release any claims.  Each
individual will have the opportunity to review the Settlement Notice, which will disclose the
Individual FLSA Collective Member Allocation and describe the claims released, and make a
decision to either accept the deal or not.  (Exh. 1-A)  Notice recipients who do not wish to accept
the terms of this Settlement can simply do nothing and retain all their rights to pursue their own

action if they wish. Notice recipients who wish to accept the terms of the Settlement must sign and return a Consent Form within sixty (60) days, and they will receive their Individual Eligible Settlement Amount. (Exh. 1, at ¶ D).

## IV. THIS COURT SHOULD APPROVE THE PARTIES' FLSA SETTLEMENT AS A FAIR RESOLUTION OF A BONA FIDE DISPUTE.

### A. Legal Standard.

Parties seeking to settle claims for FLSA violations may[2] submit their agreement to the District Court for consideration of whether the proposed settlement is fair, and the court may enter a stipulated judgment approving the agreement and dismissing the action. *See Manohar v. Sugar Food LLC*, No. 16-cv-02454-NYW, 2017 WL 3173451, at *2 (D. Colo. July 26, 2017); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). "Approval is appropriate upon demonstration that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1354). The Parties' Settlement Agreement meets these requirements for approval.

### B. The Video Engineer II Collective Meets The Requirements For Final Certification.

Courts in this District make a final determination on collective certification prior to approving an FLSA settlement. *See, e.g., Whittington v. Taco Bell of America, Inc.*, No 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *2 (D. Colo. Nov. 13, 2013). In deciding whether to certify a collective action, courts consider several factors, including: (1) the disparate factual and employment settings of individual plaintiffs; (2) various defenses available to defendant which

---

[2] At least one Court in this District has held that FLSA settlements do not require court approval, absent special circumstances. *See, e.g., Ruiz v. Act Fast Delivery of Colorado*, No. 14-cv-00870-MSK-NYW, ECF 132, (D. Colo. Jan. 9, 2017).

appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See id.* (citing *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).  Applying these factors, Plaintiff contends final collective certification is warranted, and the Parties stipulate to final collective certification for the purpose of effectuating their Settlement Agreement.[3]

1.    Plaintiff's Evidence In Support of Final Certification.

In support of his Motion for Conditional FLSA Collective Action Certification and Notice (Doc. 34), Plaintiff offered evidence that he and other Video Engineer IIs are similarly situated.  Specifically, Plaintiff testified that he worked for CenturyLink as a Video Engineer II from about February 1, 2013 to around October 2015, in Littleton, Colorado.  Similarly, Opt-in Plaintiffs Scott Baldwin, Nick Maag, and Travis Mantz, testified they worked for CenturyLink as Video Engineer IIs during the last three years.  (Doc. 34-1, at ¶ 1; Doc. 34-2, at ¶ 1; Doc. 34-3, at ¶ 1; Doc. 34-4, at ¶ 1).

While working as Video Engineer IIs for CenturyLink, Plaintiff Thompson and the Opt-in Plaintiffs (collectively "Plaintiffs") assert that each attended training and worked with other CenturyLink Video Engineer IIs from Colorado, as well as from other CenturyLink locations. (Doc. 34-1, at ¶ 2; Doc. 34-2, at ¶ 2; Doc. 34-3, at ¶ 2; Doc. 34-4, at ¶ 2).  CenturyLink pays its Video Engineer IIs, including Plaintiffs, a salary with bonus eligibility without paying any overtime compensation. (Doc. 34-1, at ¶¶ 3-4; Doc. 34-2, at ¶¶ 3-4; Doc. 34-3, at ¶¶ 3-4; Doc. 34-4, at ¶¶ 3-4).

Plaintiffs testified that CenturyLink regularly requires them and its other Video Engineer IIs to work more than forty hours per week, but it does not pay them overtime premiums.  (Doc.

---

[3] If the Parties' Settlement Agreement is not approved, Defendants intend to raise defenses to collective action certification, as argued in their Brief opposing Plaintiff's conditional certification motion.  (Doc. 36).

34-1, at ¶ 5; Doc. 34-2, at ¶ 5; Doc. 34-3, at ¶ 5; Doc. 34-4, at ¶ 5).  For example, Plaintiff testified that CenturyLink requires its Video Engineer IIs to perform significant after-hours on-call and maintenance work, as well as weekend work, without overtime compensation. (Doc. 34-1, at ¶ 6-7).  Plaintiffs testified that CenturyLink is aware that its Video Engineer IIs work more than forty hours in a week because CenturyLink expects these employees to be available to work and answer emails from CenturyLink management employees in the evenings and on weekends. Plaintiffs know this from working with and observing other Video Engineer IIs from other locations who all shared the same job responsibilities and expectations uniformly established and communicated to them all by CenturyLink management. (Doc. 34-1, at ¶ 8; Doc. 34-2, at ¶ 6; Doc. 34-3, at ¶ 6; Doc. 34-4, at ¶ 6).

Plaintiffs further testified that CenturyLink uniformly classifies them and its other Video Engineer IIs as "exempt" employees and therefore does not pay them overtime compensation for hours in excess of 40 hours in a workweek. During their employment, based upon their own personal observations in the workplace and information communicated to them by management, Plaintiffs became aware CenturyLink uniformly applies this policy and practice to all Video Engineer IIs, regardless of work location.  (Doc. 34-1, at ¶ 9; Doc. 34-2, at ¶ 7; Doc. 34-3, at ¶ 7; Doc. 34-4, at ¶ 7).

Plaintiffs testified that all Video Engineer IIs are similarly situated in that they share the same job responsibilities of monitoring, maintaining, repairing, and restoring video communication services CenturyLink provides its customers.  (Doc. 34-1, at ¶ 11; Doc. 34-2, at ¶ 9; Doc. 34-3, at ¶ 9; Doc. 34-4, at ¶ 9).  Plaintiffs testified that they and other Video Engineer IIs all similarly use CenturyLink's same video monitoring systems, ticket management systems, video analysis tools, and video delivery applications to perform their shared job responsibilities.

(Doc. 34-1, at ¶ 12; Doc. 34-2, at ¶ 10; Doc. 34-3, at ¶ 10; Doc. 34-4, at ¶ 10).  Plaintiffs testified that they and other Video Engineer IIs are all subject to CenturyLink's same support objectives, maintenance and repair protocols, training, and workplace policies and procedures.  (Doc. 34-1, at ¶ 13; Doc. 34-2, at ¶ 11; Doc. 34-3, at ¶ 11; Doc. 34-4, at ¶ 11).

During their employment with CenturyLink, Plaintiffs testified that they personally observed Video Engineer IIs in the Video Operations Business Unit performing the same or substantially similar job duties that they performed.  (Doc. 34-1, at ¶ 14; Doc. 34-2, at ¶ 12; Doc. 34-3, at ¶ 12; Doc. 34-4, at ¶ 12).  During their employment as Video Engineer IIs for CenturyLink, Plaintiffs testified that they routinely worked more than forty hours in a workweek without receiving overtime premiums, and they personally observed other Video Engineer IIs similarly working hours in excess of forty in workweek.  (Doc. 34-1, at ¶¶ 16-17; Doc. 34-2, at ¶¶ 14-15; Doc. 34-3, at ¶¶ 14-15; Doc. 34-4, at ¶¶ 14-15).

2.    This Evidence Supports Final Collective Action Certification.

Plaintiff maintains this evidence confirms that all Video Engineer IIs—regardless of work location—are similarly situated in that they share the same primary job duties; utilize the same CenturyLink systems and applications to perform their work; are subject to the same protocols, objectives, training, and workplace policies and procedures; routinely work more than forty hours in a workweek; and are uniformly classified as "exempt" and therefore not paid overtime premiums.  There is no evidence of any significant disparate factual or employment setting that would preclude collective action treatment.  There is no evidence of any individualized defenses that are unique to any particular Video Engineer II that could interfere with collective action treatment.  And, there are no procedural concerns prohibiting collective action treatment, especially in the context of this Settlement, which allows each notice recipient

9

to make an informed decision about whether to take the deal or choose not to participate and retain all their rights to pursue their own case.

Moreover, while Defendants have offered defenses, arguments and counter-evidence to Plaintiff's evidence set forth above (and will offer additional defenses, arguments and evidence should this Court not approve the Parties' Settlement), the Parties submit that final collective action certification is appropriate to effectuate their Settlement Agreement.

**C.    This Settlement Resolves A Bona Fide Dispute.**

For the court to discern whether a *bona fide* dispute exists, "the parties must present: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employee; (3) the employer's reasons for disputing the employee's right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Manohar*, 2017 WL 3173451, at *3.

The Parties describe the nature of their dispute and of Defendants' business in Paragraph I *supra*. Plaintiff describes the type of work performed by Video Engineer IIs, including himself, and his justification for the disputed wages, *supra* in Paragraph IV.B.1. Defendants contend they properly classify Video Engineer IIs, including Plaintiff, as exempt from the FLSA's overtime requirement and they also assert several affirmative defenses to Plaintiff's individual and collective claims. (Docs. 25-26). However, Plaintiff denies that he and other Video Engineer IIs perform exempt work because he contends they do not regularly supervise the work of two or more employees (Doc. 34-1, at ¶ 19; Doc. 34-2, at ¶ 17; Doc. 34-3, at ¶ 17; Doc. 34-4, at ¶ 17), and they do not regularly exercise discretion and independent judgment as to matters of significance or perform office work related to CenturyLink's general business operations or its

customers' general business operations.  (Doc. 34-1, at ¶ 20; Doc. 34-2, at ¶ 18; Doc. 34-3, at ¶

18; Doc. 34-4, at ¶ 18).

The Parties vehemently dispute whether Plaintiff and CenturyLink's other Video

Engineer IIs are entitled to overtime pay at all under the FLSA.  This is a hotly contested issue

and, if not resolved with this Settlement Agreement, will likely result in protracted, contentious

litigation.  Accordingly, this Settlement resolves a *bona fide* dispute.

### D.    The Parties' Settlement Is Fair And Equitable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to

the employees and must not frustrate the FLSA policy rationales." *Baker v. Vail Resorts*

*Management Co*., No. 13–cv–01649–PAB–CBS, 2014 WL 700096, at *2 (D. Colo. Feb. 24,

2014).  The "prime purpose" in enacting the FLSA "was to aid the unprotected, unorganized and

lowest paid ... employees who lack[ ] sufficient bargaining power to secure for themselves a

minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, n.18 (1945). *See*

*also Christopher v. SmithKline Beecham Corp*., 132 S.Ct. 2156, 2162 (2012) ("Congress enacted

the FLSA in 1938 with the goal of protect[ing] all covered workers from substandard wages and

oppressive working hours.") (citation omitted). "Normally, a settlement is approved where it is

the result of "contentious arm's-length negotiations, which were undertaken in good faith by

counsel . . . and serious questions of law and fact exist such that the value of an immediate

recovery outweighs the mere possibility of further relief . . ." *Manohar*, 2017 WL 3173451, at *2

(quoting *Felix v. Thai Basil at Thornton, Inc*., No. 14–cv–02567–MSK–CBS, 2015 WL

2265177, at *2 (D. Colo. May. 6, 2015)).

To determine whether a proposed settlement under Section 216(b) of the FLSA is fair and

equitable to all parties, courts consider (1) whether the proposed settlement was fairly and

honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable. *Whittington*, 2013 WL 6022972, at *4 (citations omitted).

The Parties' Settlement was the result of vigorous, arm's-length negotiations over the course of several months with zealous advocacy by counsel skilled in FLSA collective actions. (Rowdy B. Meeks Declaration, attached as Exhibit 2, at ¶ 8; Tracey F. George Declaration, attached as Exhibit 3, at ¶ 8). Plaintiff's claims and Defendants' defenses are hotly contested and, if not resolved with this Settlement, will result in extensive discovery, substantial motions practice, and protracted litigation, including possible appeal. (Meeks Decl., Exh. 2, at ¶ 9; George Decl., Exh. 3, at ¶ 9). Instead, this Settlement provides a Gross Settlement Amount of $275,000.00 and a Net Settlement Amount estimated at not less than $175,323.33 for distribution among 28 FLSA Collective Members. (Meeks Decl., Exh. 2, at ¶ 10; George Decl., Exh. 3, at ¶ 10). This results in an average Settlement allocation of $6,262.00 to each Participating FLSA Collective Member who elects to accept the deal. (Meeks Decl., Exh. 2, at ¶ 10; George Decl., Exh. 3, at ¶ 10). This is meaningful relief because there are approximately 1,517 FLSA workweeks during the Relevant Time Period, and the Net Settlement Amount provides each Participating FLSA Collective Member, on average, $115.57 per FLSA workweek to compensate for alleged unpaid overtime hours. (Meeks Decl., Exh. 2, at ¶ 11; George Decl., Exh. 3, at ¶ 11). Applying Video Engineer IIs average annual salary, this Settlement provides compensation for nearly ten (10) hours of overtime per FLSA workweek. (Meeks Decl., Exh. 2, at ¶ 11; George Decl., Exh. 3, at ¶ 11). This Settlement was reached only after the Parties

evaluated pay and time data for the FLSA Collective Members, allowing counsel for both sides to evaluate potential outcomes and recoveries before engaging in informed settlement negotiations. (Meeks Decl., Exh. 2, at ¶ 12; George Decl., Exh. 3, at ¶ 12).

Plaintiff's counsel are highly experienced FLSA attorneys, and it is their opinion this Settlement provides a highly favorable result for Participating FLSA Collective Members and the value of recovery at this stage far outweighs the possibility of future relief following protracted litigation and trial. (Meeks Declaration, Exh. 2, at ¶ 13; George Declaration, Exh. 3, at ¶ 13). Several disputed issues render the outcome of this litigation uncertain. Should this case proceed, Defendants intend to argue they are entitled to summary judgment because Video Engineer IIs are exempt from overtime under the FLSA, and if successful, Plaintiff and the Video Engineer II Collective would recover zero. Moreover, while Plaintiffs contend Video Engineer IIs routinely worked as many as fifteen (15) hours of overtime each week, Defendants contend that—after accounting for partial workweeks—these employees routinely worked very little to no overtime. Additionally, while this Settlement provides relief for workweeks over a three-year period (the statute of limitations for willful FLSA violations), Defendants contend that even if their classification of Video Engineer IIs runs afoul of the FLSA, any alleged violation was not willful and the FLSA's two-year statute of limitation applies to Plaintiffs' claims. These are just a few examples of legal and factual disputes that put the ultimate outcome of this case in question. Accordingly, this Settlement provides substantial, certain, and immediate relief for all FLSA Collective Members who choose to participate. Moreover, any FLSA Collective Member who does not consider the result satisfactory can simply chose not to participate and retain all their same rights to pursue their own action.

Under these circumstances, a presumption of fairness attaches to the proposed settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."). Accordingly, this Settlement is fair and reasonable and reflects an adequate compromise warranting this Court's approval.

E.    **The Attorneys' Fees And Service Payment Provided In The Settlement Are Reasonable And Merit Approval.**

1.    Plaintiff's Attorneys' Fees And Costs Are Well Within The Range Typically Approved As Reasonable.

There is a general preference that parties reach an agreement regarding the fee awarded in settlement. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."). Here, the Parties have agreed Plaintiff's counsel will receive one-third (1/3) of the Gross Settlement Amount, plus $510 in expenses. (Exh. 1, at ¶ 2D). This is a reasonable fee, warranting this Court's approval.

When addressing a common fund settlement, such as the one at issue in this case, it is appropriate to calculate a reasonable attorney's fee based on a percentage of the fund, instead of using the lodestar method. *See Whittington,* 2013 WL 6022972, at *5 ("In common fund cases, utilizing the percentage method to calculate attorney fees awards is the standard.") (citing *Gottlieb v. Barry*, 43 F.3d 474, 482–83 (10th Cir.1994); *Barr v. Qwest Communications Co.*,

LLC, Case No. 01–cv–00748–WYD–KLM, 2013 WL 141565, *3 –4 (D. Colo. Jan. 11, 2013)). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis, as in this case." *Shaw v. Interthinx, Inc*., No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *5 (D. Colo., April 21, 2015) (citing *Lucken Family Limited Partnership, LLLP v. Ultra Res., Inc*., No. 09-cv- 01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. December 22, 2010)). [4]

To determine a reasonable fee the Court also considers the following factors: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Whittington*, 2013 WL 6022972, at *5 (citing *Johnson v. Georgia Highway Exp., Inc*., 488 F.2d 714, 719 (5th Cir. 1974)). However, "rarely are all of the Johnson factors applicable." *Id.*

---

[4] Plaintiff's counsel here, Rowdy B. Meeks, was one of the Class counsel in *Shaw v. Interthinx, Inc*., 2015 WL 1867861, at *1. In *Shaw,* Judge Blackburn found that "Class Counsel have shown their ability by achieving the excellent result obtained for the classes in this case" and approved the requested attorney fees, expenses, and service awards.

a.    A One-Third Fee Is Within The Customary Range.

Plaintiff seeks an attorneys' fee award of $91,666.67, or one-third of the Gross Settlement Amount, plus $510.00 in expenses.  This is well within the normal range for a contingent fee award. *See Whittington*, 2013 WL 6022972, at *5 (approving fees and costs equal to approximately 39% of common fund as "within the normal range for a contingent fee award" in an FLSA settlement); *Lucken Family Ltd. Partnership, LLLP*, 2010 WL 5387559, at *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing *Vaszlavik v. Storage Technology Corp.*, Case No. 95–B–2525, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%–50% range and is presumptively reasonable").); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").

b.    The Other *Johnson* Factors Also Support Approval.

The other *Johnson* factors also weigh in favor of approving Plaintiff's attorney fee request.  Plaintiff's counsel undertook this case on a contingency basis and invested months of time and effort with the risk of obtaining nothing.  (Meeks Declaration, Exh. 2, at ¶ 20; George Declaration, Exh. 3, at ¶ 21).  Counsel have expended over 200 hours litigating this case, including investigating Plaintiff's claims, drafting the Complaint, drafting and securing

declarations from Plaintiff and the Opt-in Plaintiffs regarding their work experiences, drafting the conditional certification motion, analyzing pay and time data for the FLSA Collective Members, creating a damages model to assist with settlement discussions, negotiating a settlement with Defendants' counsel, drafting the Settlement Agreement, Notice, and Consent Form, and drafting this settlement approval motion.  (Meeks Declaration, Exh. 2, at ¶ 21; George Declaration, Exh. 3, at ¶ 22).  This does not account for the time Counsel will spend in the future to oversee Settlement administration and notice, including responding to FLSA Collective Members' questions and advising them of their rights.  (Meeks Declaration, Exh. 2, at ¶ 21; George Declaration, Exh. 3, at ¶ 22).  All considered, Plaintiffs' counsel have more time invested in this case than the fee award they seek.  (Meeks Declaration, Exh. 2, at ¶ 23; George Declaration, Exh. 3, at ¶ 24).  This factor weighs in favor of approval.

Moreover, FLSA collective cases present unique procedural obstacles not present in individual cases, and Counsel are highly skilled in this practice area.  (Meeks Declaration, Exh. 2, at ¶ 19; George Declaration, Exh. 3, at ¶ 20).  Mr. Meeks has practiced law for nearly 25 years (graduating law school in 1993), and Ms. George has nearly 18 years experience (graduating law school in 2000).  (Meeks Declaration, Exh. 2, at ¶ 14; George Declaration, Exh. 3, at ¶ 14).  Their representative list of wage and hour class and collective action cases confirms they are highly skilled in this practice area.  (Meeks Declaration, Exh. 2, at ¶ 19; George Declaration, Exh. 3, at ¶ 20).  This factors supports the fee requested.

As is the case for attorneys undertaking FLSA collective actions, "[t]here is an inherent preclusion of other work in litigating a complex case such as this on a contingency fee basis." *Shaw v. Interthinx, Inc*., 2015 WL 1867861, at *6.  Class Counsel are "precluded by the ticking of the clock from taking certain other cases given that they [had] decided to take a chance on a

possible recovery in a contingency fee rather than strictly working on paid hourly wages." *Id.*
(quoting *Whittington*, 2013 WL 6022972 at *6)).  Indeed, there is "the possibility in a case of this
kind that [Class Counsel], having given up other cases in order to actively pursue this case, will
actually recover no payment for [their] time and efforts." *Id.*; (Meeks Declaration, Exh. 2, at ¶
20; George Declaration, Exh. 3, at ¶ 21).  Thus, this factor also supports the fee requested.

With regard to the length and nature of the professional client relationship, "[T]he
Johnson court noted that a lawyer may vary his or her fee for similar work in light of the
professional relationship of the client with the lawyer." *Shaw v. Interthinx, Inc.*, 2015 WL
1867861, at *7 (citations omitted).  "Unlike corporate clients, who may need future legal
services from their counsel, the likelihood that many class members will be seeking additional
representation from Class Counsel is slim. Moreover, the wage claims asserted in this case do
not lend themselves to continuous, long-term attorney-client relationships." *Id.*  This factor also
supports Plaintiff's fee request.

Furthermore, as discussed in detail *supra*, the results obtained in this case are excellent.
Plaintiff's Counsel secured a recovery that repays each Participating FLSA Collective Member
for approximately ten (10) hours of overtime per FLSA workweek.  This Settlement provides
early, immediate, and substantial relief without the risk of summary judgment (a zero-dollar
recovery) and without the attenuating risks and delay of trial.  (Meeks Declaration, Exh. 2, at ¶
13; George Declaration, Exh. 3, at ¶ 13).

This highly favorable result, along with all other relevant factors, supports Plaintiff's
Counsel's customary fee request of one-third (1/3) of the Gross Settlement Amount, or
$91,666.67.  Likewise, Plaintiff's minimal request for $510.00 in expenses—which equals only
the filing fee and service fee—is also abundantly reasonable and warrants this Court's approval.

       2.      <u>Plaintiff Alan Thompson's Requested Service Payment Is Reasonable</u>.

"Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Lucken Family Limited Partnership, LLLP*, 2010 WL 5387559, at *8. Factors to consider in determining an incentive award may include: "(1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Id*. at *8 (citing *Cook v. Niedert*, 142 F. 3d 1004, 1016 (7th Cir. 1998)).

The $5,000.00 agreed Service Award to Plaintiff Alan Thompson is appropriate and is commensurate with, if not less than, awards in similar cases. *See, e.g., Dorn v. Eddington Sec., Inc.*, No. 08-CV-10271-LTS, 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) (holding that a service award of $10,000 to the plaintiff in a FLSA and state law wage class action was reasonable, stating "such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs."); *Shaw*, 2015 WL 1867861, at *9 (finding $10,000 incentive awards to each of the five named plaintiffs and $2,500 incentive awards to each of the two deposed opt-in plaintiffs were reasonable); and *Pliego v Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding the proposed service award of $7,500.00 to the named plaintiff was reasonable).

Here, Plaintiff Thompson attached his name to this federal lawsuit, making the public and his future employers aware that he filed suit against his former employer. He also reached out to

other Video Engineer IIs to seek support for this case and secured the participation and supporting testimony of Opt-in Plaintiffs, increasing the likelihood this case would achieve conditional certification and increasing the settlement value of this case. Plaintiff Thompson reviewed and approved the Complaint, aided in the investigation of claims, and advocated for the FLSA Collective Members to achieve this Settlement. His time, efforts, and personal risks in pursuing this federal lawsuit warrant the reasonable Service Payment provided with this Settlement.

## CONCLUSION

The Parties' Settlement Agreement provides certain, immediate, and meaningful relief to the FLSA Collective Members who choose to participate. Any FLSA Collective Member who is not satisfied with the terms, which are set forth in detail in the Notice (Settlement Agreement, Exh.1, at Exhibit A), can simply do nothing and retain all their rights to file their own lawsuit. The Settlement is fair and reasonable, resolves a *bona fide* dispute, and includes an award of reasonable attorneys' fees. For these reasons, the Parties request this Court's order approving the Settlement Agreement, including its attorneys' fees and Service Payment awards, and dismissing this action.

Respectfully submitted this 21st day of February, 2018.

**DAVIS GEORGE MOOK LLC**

*/s/ Tracey F. George*

Tracey F. George, (MO#52361)
1600 Genessee, Suite 328
Kansas City, Missouri 64102
Tel:    (816) 569-2629
Fax:    (816) 447-3939
tracey@dgmlawyers.com
www.dgmlawyers.com

Rowdy B. Meeks, (KS#16068)
ROWDY MEEKS LEGAL GROUP LLC
8201 Mission Rd., Suite 250
Prairie Village, Kansas 66208
Tel:    (913) 766-5585
Fax:    (816) 875-5069
rowdy.meeks@rmlegalgroup.com
www.rmlegalgroup.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of February, 2018, I filed the foregoing

**UNOPPOSED MOTION FOR FLSA SETTLEMENT APPROVAL** via this Court's

CM/ECF system, which affected service on the following counsel of record:

Charles B. Jellinek, MO #44462
Amanda Colvin, MO #61763
BRYAN CAVE LLP
211 North Broadway
Suite 3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 552-8138
cbjellinek@bryancave.com
amanda.colvin@bryancave.com

**Attorneys for Defendants**

/s/ *Tracey F. George*

ATTORNEYS FOR PLAINTIFF

21